1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

MICHAEL DYE,

                    Plaintiff,

      v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                    Defendant.

NO.  C09-1500-TSZ-JPD

REPORT AND
RECOMMENDATION

       Plaintiff Michael Dye appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f, after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

## I.      FACTS AND PROCEDURAL HISTORY

       At the time of his administrative hearing, plaintiff was a 49 year-old man with a GED degree.  Administrative Record ("AR") at 248-49.  He has not worked since 1992, and therefore has no past relevant work experience.  AR at 250.  On September 16, 2004, plaintiff filed a claim for SSI payments.  AR at 15.  He asserts that he is disabled due to seizure

REPORT AND RECOMMENDATION - 1

disorder, panic disorder, depression, anxiety, inability to concentrate, sleep difficulties, back pain, obesity and chest pain. Dkt. No. 15 at 1.

Plaintiff has filed a series of disability claims, including a Title II claim that was denied due to lack of insured status. AR at 15. Subsequent Title XVI applications were filed in 1990, 1991, 1995, 1996 and 1997. *Id.* Benefits were terminated pursuant to PL 104-21 as of January 15, 1997, all at the agency level. *Id.* A new Title XVI application was filed in January 1999, which was denied by a November 2000 ALJ decision. AR at 15. The Appeals Council denied plaintiff's request for review, and no further action was taken. Another Title XVI application was filed on March 13, 2001, which was denied in a September 2003 ALJ decision. AR at 15.

In the prior decisions, plaintiff was denied disability benefits because drug and alcohol abuse was material to the determination of disability, except for the last decision, dated September 2003. AR at 15. In that decision, the ALJ found plaintiff not disabled because he retained the residual functional capacity to perform a significant range of light work, and there were jobs in the economy that he could perform. AR at 15. Evidence associated with the prior filings, including the 2003 ALJ decision were admitted into the record of the hearing that is the subject matter of this appeal.

Plaintiff's requested administrative hearing took place on January 14, 2008. AR at 241-76. On July 23, 2008, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff retained a residual functional capacity to perform certain types of medium work and that he could perform jobs that existed in significant numbers in the national economy. AR at 23. After receiving additional material from plaintiff's counsel, his appeal of the ALJ's decision was denied by the Appeals Council on August 24, 2009, AR at 5-8, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 4. Briefing was completed on July 16, 2010.

REPORT AND RECOMMENDATION - 2

## II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

REPORT AND RECOMMENDATION - 3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## IV.    EVALUATING DISABILITY

As the plaintiff, Mr. Dye bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d),

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.   DECISION BELOW

On July 23, 2008, the ALJ issued a decision finding the following:

1.   The claimant has not engaged in substantial gainful activity since September 16, 2004, the application date.

2.   The claimant has the following severe impairments: obesity, opioid dependency in sustained remission due to medication management, major depressive disorder and an anxiety disorder.

3.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4.   After careful consideration of the entire record, the undersigned finds that the claimant, a convicted felon[2], has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except  he is limited to simple routine tasks with occasional contact

---

[2]  The claimant's status as a convicted felon is vocationally relevant give the restrictions imposed by state and federal law on some work positions.

REPORT AND RECOMMENDATION - 5

with public and co-workers in a stable work environment, and he must avoid concentration exposure to machinery and heights.

5.    The claimant is unable to perform any past relevant work.

6.    The claimant was born on XXXXX, 1959[3] and was 44 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7.    The claimant has a limited education and is able to communicate in English.

8.    Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10.   The claimant has not been under a disability, as defined in the Social Security Act, since September 16, 2004, the date the application was filed.

AR at 17-24.

## VI.    ISSUES ON APPEAL

The principal issues on appeal are:

1.    Did the ALJ err at Step 2, by failing to find that plaintiff's severe impairments included back impairment and panic attacks?

2.    Did the ALJ err by concluding that plaintiff's mental impairments failed to meet or equal a Listing?

3.    Was the ALJ's RFC determination supported by substantial evidence?

4.    Did the ALJ err in her credibility assessment?

5.    Did the hypothetical posed to the Vocational Expert ("VE") contain all of plaintiff's limitations?

Dkt. No. 15 at 1-2.

---

[3]  The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

VII.   DISCUSSION

A.   The ALJ Erred in Her Assessment of Plaintiff's Severe Impairments

At step two, the ALJ found that plaintiff suffered from the severe impairments of obesity, opioid dependency in sustained remission due to medication management, major depressive disorder and an anxiety disorder.  AR at 17.  Plaintiff argues that the ALJ failed to find his back pain and anxiety disorder to be severe impairments and that her failure to consider them in her disability determination was legal error.  Dkt. No. 15 at 2-7.  The Commissioner responds that plaintiff failed to carry his burden of proving that the foregoing impairments were severe and asserts that the ALJ's determination is supported by substantial evidence.  Dkt. No. 19 at 6-10.

Step two of the sequential evaluation process requires a claimant to prove that he has a severe impairment or combination of impairments.  20 C.F.R. 404.1520(c), 416.920(c).  An impairment is severe if it significantly limits the plaintiff's ability to perform basic work activities.[4]  20 C.F.R. §  404.1521(a), 416.921(a).  When an impairment or combination of impairments consist of no more than a slight abnormality that have only a minimal effect on an individual's ability to work, a finding of non-severe is appropriate.  *Smolen*, 80 F.3d at 1290 (internal citations omitted); *see also* SSR 96-3p, at *1.  Hence, step two acts as a "*de minimis* screening device to dispose of groundless claims." *Id.*

Here, the ALJ dismissed plaintiff's claims of back pain, which is a symptom rather than, by itself, an impairment, as a bit of an afterthought.  "The claimant claims a back injury from falling off the back of a car years ago (Exhibit C22F), but there is no objective evidence of this event and any severe injuries to his back; it is mentioned only infrequently and not as a

---

[4]  Basic work activities include the abilities and aptitudes necessary to do most jobs including walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, understanding, carrying out and remembering simple instructions, and dealing with changes in a routine work setting.  *See* 20 C.F.R. §§ 404.1521(b), 416.921(b).

major concern.  I do not find this to be a medically determinable severe impairment."  AR at 19.

The record contains several references to plaintiff's back pain.  Ryan Chew, M.D., a reviewing physician, noted that the plaintiff reported a 1967 motor vehicle accident, and that he "was told that he had degenerative disk disease.  He describes the pain as a sharp, aching pain without radiation."  AR at 163.  His statement to Dr. Chew is documented by a Harborview Medical Center report, dated March 8, 2000.  At that time, plaintiff was being seen for what appears to be a fall.  The x-ray findings included "probable C5 vertebral body anterior inferior lip fracture….Mild disc degeneration of the lower C-spine is present."  AR at 712.  Dr. Chew also administered a straight leg raising test, which indicated pain at 30 degrees in the lower lumbar region."  AR at 165.  He concluded reporting "reproducible palpable tenderness over the right lower lumbar spine with spasm."  *Id.*  The ALJ ignored Dr. Chew's findings.

Similarly, although the ALJ cited Physicians Assistant ("PA") Susan Jackson's report by record page number which included reference to the reported falling from a car that led to a long history of lower back pain, the ALJ said there was no objective evidence of severe injuries to the back.  AR at 230.  However, the ALJ ignored PA Jackson's own findings contained on the same report.  "+TTP over L-spine, gross ROM intact."  *Id.*

The Commissioner argues that PA Jackson is not an acceptable medical source, and this justifies the ALJ's action.  In order to determine whether a claimant is disabled, an ALJ may consider lay witness sources, such as testimony by nurse-practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends.  20 C.F.R. § 404.1513(d).  Such testimony regarding a claimant's symptoms or how an impairment affects his ability to work is competent evidence and cannot be disregarded without comment.  *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  This is particularly true for such "non-medical" sources as nurses and medical assistants.  *See* Social Security Ruling ("SSR") 06-03p (noting that because such persons "have increasingly assumed a greater

percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists," their opinions "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.").[5]  If an ALJ chooses to discount testimony of a lay witness, especially a treating physician's assistant, she must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony.  *Id.* at 919.

The ALJ did not discuss either source.  Both provide relevant, competent evidence about back impairments, and should have been considered, particularly at step two, when the test is a *de minimis* screening device to dispose of groundless claims.  This case will be remanded for further proceedings to reevaluate whether plaintiff's back impairment is severe in light of the entire record.

Plaintiff also argues the ALJ failed to consider his panic disorder as a severe impairment.  However, in his opposition, the Commissioner argues that the disorder is subsumed in the severe anxiety impairment found by the ALJ.  In his reply, the plaintiff appears to concede the argument.  The ALJ did not err in not making a separate finding of a severe impairment of panic disorder.

B.    The ALJ Erred at Step Three

At step three, the ALJ must determine if plaintiff's severe impairments constitute or are the equivalent to a Listing.  20 C.F.R. §416.920(d).  The Listings describe, for each major body system, impairments which are severe enough to be per se disabling.  20 C.F.R. §416.925.  Plaintiff has the burden of producing medical evidence that establishes all of the requisite medical findings in a Listing.

---

[5]  Social Security Rulings do not have the force of law.  Nevertheless, they "constitute Social Security Administration (SSA) interpretations of the statute it administers and of its own regulations," and are binding on all SSA adjudicators.  20 C.F.R. § 402.35(b); *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001).  Accordingly, such rulings are given deference by the courts "unless they are plainly erroneous or inconsistent with the Act or regulations."  *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

REPORT AND RECOMMENDATION - 9

Plaintiff claims the ALJ erred by not finding that his impairment constituted or equaled a Listing for 12.04 (Affective Disorders) and 12.06 (Anxiety Related Disorders).  Dkt. No. 15 at 10-15.  A Listing requires that all of Part "A" criteria be met, and that Part "B" or Part "C" criteria be met.  While not ruling on whether Part A criteria were met, the ALJ did find that his impairments did not meet the criteria in Part B.  AR at 28.  The ALJ also determined that Part C criteria were not met, but this is not the subject of the appeal.  As to Part B criteria, the regulation provides:

> In order to satisfy the criteria in paragraph B, [the Claimant's] paragraph A impairments must result "in at least two of the following:"
>
> 1.    Marked restriction in the activities of daily living; or
>
> 2.    Marked difficulties in maintaining social functioning; or
>
> 3.    Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
>
> 4.    Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

20 C.F.R. Pt. 404, Subpt. P, App. 1.

Plaintiff claims that the first three Part B criteria have been met.  The ALJ, in contrast, found plaintiff's daily living activities were only "mildly restricted," based upon a finding that plaintiff can generally manage his living needs, has coped "reasonably well" without any visible means of support, can live with his parents and performs chores while working there.  AR at 20.  The ALJ found plaintiff sustained only "moderate" difficulties in maintaining social functioning in light of his good relationship with his ex-wife and grown son and his parents, with whom he lives.  The ALJ did note he was withdrawn and does not socialize much, but attends his treatment programs, is not house bound, and manages to do some moderate socialization.  *Id.*  Finally, the ALJ concluded that the plaintiff suffered only moderate

REPORT AND RECOMMENDATION - 10

limitations in concentration, persistence and pace.  *Id*.  The ALJ did not provide examples that would support his finding, but suggested the limitation may be due to plaintiff's medication regime and his anxiety over his treatment and his interaction with others.  *Id*.

Whether a plaintiff's impairments constitutes or equals a Listing is an issue reserved to the Commissioner.  SSR 96-5p, *available at* 1996 WL 374183, at *2.  Nevertheless, the determination must be based on substantial evidence.  Citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005), the Commissioner argues that an ALJ is not required to discuss a claimant's impairment or compare it to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence, and that plaintiff failed to present any evidence to establish equivalence.  The Commissioner is correct about the plaintiff's obligations.  However, the Commissioner is wrong when he states that the plaintiff presented no such evidence.  Plaintiff presented and relied upon medical opinions of Drs. Phan, Strand and Forslund, all treating physicians, to support his claim that he met the Listing above. Dr. Phan, for example, specifically found marked impairment in plaintiff's depressed mood, and in his overall global illness in 2002.  AR at 175.  In 2004, Dr. Phan found marked impairment in plaintiff's verbal expressions of anxiety or fear and his overall global illness. AR at 183.  Dr. Strand, in 2003 found marked impairments in his depressed mood, suicidal trends, verbal expressions of anger, social withdrawal, motor agitation, paranoid behavior, hyperactivity, physical complaints, and overall global illness.  AR at 179.  Ira Feiger, MSW, MHP assessed plaintiff with marked limitations due to his depressed mood, verbal expressions of anxiety or fear, and social withdrawal.  He, too, assessed plaintiff's global illness as "marked."  In 2007, Tim Forslund, also indicated plaintiff's limitations due to depressed mood, verbal expression of anxiety or fear, social withdrawal and global illness were "marked."

Despite these rather consistent findings, the ALJ, in a very cursory fashion, determined that plaintiff's impairments did not constitute or equal a Listing.  She did so without referring to the reports of the treating physicians, with the exception of the 2004 report of Dr. Phan,

whose opinions of depressions and anxiety, were dismissed by ALJ speculation.  AR at 19.
Her conclusions regarding the failure of the plaintiff's mental impairments to constitute or
equal a Listing are not supported by substantial evidence.

Because this is an issue reserved for the Commissioner and because the Commissioner
never reached a decision about whether the plaintiff's impairments satisfied Part A criteria, this
matter will be remanded to the Commissioner to review *all* of the medical evidence and
reevaluate whether plaintiff's mental impairments equal or constitute a Listing under §§12.04
(Affective Disorders) and 12.06 (Anxiety Related Disorders).

C.    The ALJ Erred in Her RFC Analysis

A plaintiff's RFC is the most he can do considering his impairments and limitations.
SSR 96-8p, *available* at 1996 WL 374184.  The ALJ has the responsibility of determining
plaintiff's residual functional capacity.  20 C.F.R. §416.946; SSR 96-5p, *available at* 1996 WL
374183.  To assess plaintiff's RFC, an ALJ must consider the entire record and explain how
she weighs the medical evidence and testimony.  *Id*.

The ALJ erred in several respects in her assessment of plaintiff's RFC.  First, as
indicated above, her assessment was based on no physical impairments associated with
plaintiff's back.  Because the Court has concluded that the ALJ may have erred in this regard,
her assessment of plaintiff's RFC should be reevaluated.  This is also true because in prior
cases involving plaintiff cited by the ALJ, the plaintiff was found to have an RFC limiting him
to "light" work, rather than the "medium" work level the ALJ found in this case.  *See e.g.,* AR
at 15.  Here, the ALJ found plaintiff could do medium work, without making reference any
changes that may have improved plaintiff's physical condition from his previous cases to
permit him to work at a medium level.

As to plaintiff's mental impairments, the ALJ reached an assessment of plaintiff's
abilities with no meaningful consideration of the opinions of Drs. Phan, Strand, Forslund, or
the opinions of Ira Feiger, and Miranda Nigrey (AR at 239-40) all of whom had been treating

1  plaintiff. This almost complete disregard of these opinions cannot be squared with the

2  requirement of *Orn v. Astrue*, 495 F.3d 625, 631-33 (9th Cir. 2007).

3          Finally, in her RFC and Listings analysis, the ALJ relied heavily on a report by Ms.

4  Phillips, a counselor with Therapeutic Health Services. AR at 19, 22, 222-24. The ALJ

5  concluded, among other things that the letters of Ms. Phillips "shows the claimant successfully

6  pursuing and benefitting from medications and treatment that have ameliorated his depression

7  and panic disorder to the extent that he can work with the limitations noted in the residual

8  functional capacity finding." AR at 22.

9          The ALJ misreads the letter from Ms. Phillips. Ms. Phillips does report that plaintiff

10 has been successfully following treatment. In addition, both letters include the same sentence

11 that a client using medication management "for opiod dependency is not usually limited as to

12 whether they can work, attend school or other activities, but other issues may prevent these

13 activities." The ALJ misconstrued this letter to suggest that plaintiff could therefore engage in

14 employment activities, notwithstanding the opinions of his treating physicians. This reading is

15 possible only if one ignores the phrase "but other issues may prevent these activities." In other

16 words, Ms. Phillips was speaking generally about persons receiving treatment for opiod

17 dependency, and not about Mr. Dye specifically, or even generally of a person going through

18 opiod dependence with similar mental impairments. The ALJ erred by seeming to substitute

19 Ms. Phillips' generalizations relating to individuals receiving opiod dependency treatment for

20 the opinions of the plaintiff's treating physicians. Ms. Phillips' letters do not constitute

21 substantial evidence that support of her RFC assessment. On remand, the ALJ will review all

22 of the medical evidence, including the opinions of Drs. Phan, Strand, Forslund and Mr. Feiger

23 and Ms. Nigrey, and reassess plaintiff's RFC.

24          D.     The ALJ Shall Reevaluate Plaintiff's Credibility

25          A determination of whether to accept a claimant's subjective symptom testimony

26 requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen v. Chater*, 80 F.3d 1273,

REPORT AND RECOMMENDATION - 13

1281 (9th Cir. 1996); Social Security Ruling ("SSR") 96-7p.  First, the ALJ must determine

whether there is a medically determinable impairment that reasonably could be expected to

cause the claimant's symptoms.  20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at

1281-82; SSR 96-7p.  Once a claimant produces medical evidence of an underlying

impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms

solely because they are unsupported by objective medical evidence.  *Bunnell v. Sullivan*, 947

F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988).

Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide

"clear and convincing" reasons for rejecting the claimant's testimony.  *Smolen*, 80 F.3d at

1284; *Reddick*, 157 F.3d at 722.  "General findings are insufficient, rather the ALJ must

identify what testimony is not credible and what evidence undermines the claimant's

complaints."  *Reddick*, 157 F.3d at 722.

The ALJ found plaintiff lacked credibility because (1) he was found to be malingering

and (2) a request for medication in 2007 evidenced an exaggeration of pain in order to receive

prescription pain medication.  Plaintiff asserts that does not amount to substantial evidence to

support an adverse credibility determination.

### 1. *Malingering*

The ALJ found plaintiff to be malingering based upon a June 1999 medical report.  AR

at 424.  At that time, Wendy Woodard, Psy.D, opined plaintiff was malingering, and in her

prognosis, stated "It does not appear that Mr. Dye has much incentive to change.  He has a

history of repeated difficulty staying sober and out of jail.  Personality testing would help to

clarify his diagnosis."  AR at 425.  Because of his drug and alcohol abuse, plaintiff had been

denied benefits.  AR at 15.  However, by all reports (*see e.g.,* Katharine Phillips reports AR at

222-24 relied upon by the ALJ erroneously to assess plaintiff's RFC), plaintiff has been clean

and sober, as measured by negative urinalysis tests since May 2004.  Indeed, he has been so

compliant that he has earned "carry" privileges for his methadone use.  *Id*.

REPORT AND RECOMMENDATION - 14

While Mr. Dye was diagnosed in 1999 with malingering and having not much incentive to change, things, in fact, did change. Contrary to Dr. Woodard's prediction, Mr. Dye did change his history of staying sober and out of jail. No other medical provider has charged plaintiff with malingering. Although the malingering finding was true 11 years ago, the ALJ had contrary evidence before her rebutting the prognosis of plaintiff not having incentive to change. This out-dated reference, in light of plaintiff's fairly dramatic change in sobriety, does not support a continued pattern of malingering. Accordingly, the ALJ was required to present "clear and convincing" reasons to reject plaintiff's testimony.

### 2. *Exaggeration of Pain to Receive Prescription Pain Medication*

The ALJ claims that plaintiff "requested the same medications and services from a treatment provider as his brother." AR at 22. Although the specific reference is not included in her decision, based upon the briefing, this apparently relates to the alprazolam medication Mr. Dye requested on October 10, 2007, which was also requested by his brother. AR at. 230. This same medication was previously recognized by his medical providers in June, July, and August of 2007 as valid registered prescriptions taken by Mr. Dye for his seizure and panic disorders. *See* AR at 226-28. Plaintiff has a brother who is also undergoing treatment for opiod addiction is on a methadone treatment regime. AR at 257. The fact that Mr. Dye requested medication that he had been receiving in the past, which apparently was also prescribed to his brother and had been requested by his brother earlier in the day is not all together surprising. It does not, by itself, constitute "clear and convincing" reasons to reject the plaintiff's testimony.

### E. Remand Requires a Reevaluation of the Step Five Analysis

After a claimant has demonstrated that he has a severe impairment that prevents him from doing his past relevant work, he has made a prima facie showing of disability. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). The burden then shifts to the Commissioner at

step five to demonstrate that, in light of the claimant's RFC, age, education, and work experience, he can perform other types of work that exist in "significant numbers" in the national economy. *Id.*; 20 C.F.R. § 404.1520(f).

If a plaintiff suffers from significant non-exertional impairments not contemplated by the Medical Vocational Guidelines ("Guidelines"), the ALJ must use the principles in the appropriate sections of the regulations to determine whether Plaintiff is disabled. SSR 85-15, at *1; *Tackett*, 180 F.3d at 1101-02. If this is the case, the ALJ must call upon a Vocational Expert ("VE"). *Tackett*, 180 F.3d at 1102. In this scenario, the ALJ must provide the VE with an accurate and detailed description of the claimant's impairments, as reflected by the medical evidence of record. *Id.* at 1101.

Here, the Court has directed a reevaluation of plaintiff's severe impairments, whether they constitute or are equivalent to a Listing, a reevaluation of plaintiff's RFC, a reevaluation of plaintiff's credibility, and appropriate treatment of plaintiff's medical providers' opinions. This will require the ALJ to formulate a hypothetical to the VE that encompasses all of the plaintiff's impairments, if, on remand, the disability analysis proceeds to step five.

### VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

DATED this 12th day of August, 2010.

*James P. Donohue*
_____
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 16